IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RICHARD NEWBURGER**<br>7350 S. Coles Ave.<br>Chicago, IL 60649<br><br>*Plaintiff,*<br><br>v.<br><br>**THE CITY OF CLEVELAND**<br>601 Lakeside Avenue, Room 106<br>Cleveland, OH 44113<br><br>**CALVIN WILLIAMS**<br>(in his official and personal capacities)<br>c/o Department of Public Safety<br>601 Lakeside Avenue, Room 230<br>Cleveland, OH 44113<br><br>  -and-<br><br>**MATTHEW FRANCE**<br>(in his official and personal capacities)<br>c/o Department of Public Safety<br>601 Lakeside Avenue, Room 230<br>Cleveland, OH 44113<br><br>*Defendants.* | Case No.<br><br>Judge<br><br>Magistrate Judge |
| **COMPLAINT WITH JURY DEMAND** ||

## NATURE OF ACTION

1.      By this civil-rights action, brought under 42 U.S.C. §1983 and Ohio law, Plaintiff

Richard Newburger seeks to hold the City of Cleveland, its police chief, and its police

officers responsible for violating his constitutional right to peacefully protest the American

government when Newburger joined Gregory Lee "Joey" Johnson's constitutionally

protected burning of an American flag, and chanted words of protest in a designated free-

speech zone outside of the 2016 Republican National Convention (RNC) in Cleveland.

2.      Mr. Newburger's extensive experience in peaceful political protest began in 1976.

Mr. Newburger since protested the installation of nuclear missiles in Germany in 1982, the

announcement of the Iraq War in 2003, and participated in the Occupy Wall Street and

Black Lives Matter movements. Peaceful protest is a significant part of Mr. Newburger's

political and personal identities.

3.      Mr. Newburger believes it is his duty to publicly express dissent so people in this

country know they are not alone in their political views, and people globally know the

status quo does not represent the political views of all within the U.S.'s borders.

4.      Mr. Newburger's ability to peacefully express his political views became vitally

important to him when Donald Trump was likely to become the 2016 Republican nominee.

Mr. Newburger sought to show people in this country and the world that what he views as

Donald Trump's imperialist, racist, sexist, and xenophobic rhetoric is *not* how all here view

the United States and the world. Mr. Newburger was part of a group attempting to send this

message by helping Mr. Johnson burn the American flag as Donald Trump was nominated.

5.    Mr. Newburger's ability to express political dissent was cut-short by the City of Cleveland through unconstitutional policing practices. The opportunity to send this message, with the same force and effect, and at the same critical, historical moment in time, will never again be available to him.

## PARTIES

6.    Plaintiff Richard Newburger is a resident of Chicago, Illinois, and member of the Revolution Club, a group of political protesters that organized to support Mr.  Johnson's symbolic act of flag burning. Mr. Newburger devotes his life to peaceful political protest around the world, and was present at the 2016 RNC. Mr. Newburger now dedicates his time to training younger protesters in logistics and safety to effectuate peaceful protests.

7.    Defendant City of Cleveland (the "City") is a municipal corporation under Article XVIII of the Ohio Constitution, and a "person" subject to lawsuit within the meaning of 42 U.S.C. § 1983. The City operates and supervises the Department of Public Safety (the "DPS"), which includes the Division of Police (the "Division").

8.    Defendant Calvin Williams is the City's chief of police. At all relevant times, he acted under color of state law and in his official capacity. He is sued in both his official and personal capacities.

9.    Defendant Matthew France is a Cleveland police officer, who acted at all relevant times under color of state law and in his official capacity. He is sued in both his official and personal capacities.

## JURISDICTION AND VENUE

10.    Under 28 U.S.C. §§ 1331, 1343 and 2201, Mr. Newburger asserts jurisdiction over federal claims under 42 U.S.C. §§ 1983 and 1988, which provide for attorneys' fees in civil-

rights claims. This Court has supplemental jurisdiction over Mr. Newburger's state-law claims under 28 U.S.C. §1367.

11.     This Court has personal jurisdiction over Defendants, who reside in and conduct business in this District. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to Mr. Newburger's claims took place within this District.

### Factual Background

**The Supreme Court declares First Amendment right to burn the American flag—in a case centered around Mr. Newburger's colleague Gregory Lee Johnson.**

12.     In 1984, Mr. Johnson attended the Republican National Convention in Dallas, Texas, to protest American capitalism and military imperialism he attributed to the Republican re-nominee, President Ronald Reagan, and symbolized by the American flag. Accompanied by a protest group, Mr. Johnson marched to City Hall, where he "unfurled the American flag, doused it with kerosene, and set it on fire."[1] He was then charged (and convicted) for his symbolic speech.

13.     In 1989, the Supreme Court declared his conviction for flag-desecration unconstitutional.  The Court rejected Texas's justification—preventing breaches of the peace—as backwards and insufficient, because protected expression must be able to "invite dispute" and "may indeed best serve its high purpose when it induces a condition of unrest . . . or even stirs people to anger."[2]

14.     Writing for the Court, Justice Brennan explained that interfering with Mr. Johnson's speech denigrated the principles for which the flag flew, including the "bedrock" principle

---

[1] *Texas v. Johnson*, 491 U.S. 397, 399 (1989).

[2] *Id.* at 408.

that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."[3]

15.     The Court therefore provided clear instructions for self-styled patriots who might encounter his speech: salute the flag; don't silence the speaker.

> We can imagine no more appropriate response to burning a flag than waving one's own, no better way to counter a flag burner's message than by saluting the flag that burns, no surer means of preserving the dignity even of the flag that burned than by—as one witness here did—according its remains a respectful burial. We do not consecrate the flag by punishing its desecration, for in doing so we dilute the freedom that this cherished emblem represents.[4]

**The Ohio Supreme Court repudiates Cleveland police for punishing protected speech.**

16.     In Cleveland, these instructions fell on deaf ears. As a series of court decisions recount, even in the wake of *Texas v. Johnson*, Cleveland police officers repeatedly attempted to interfere with symbolic burnings that challenged national or civic pride.

17.     The first commenced the very next year, when Cleveland police officers arrested Cheryl Lessin, a supporter of the Revolutionary Communist Party who burned an American flag in Public Square to protest American militarism.[5]

18.     Past was already prologue.

> Someone from the crowd, apparently offended by the demonstrator's proposed actions, tried to pull the flag out of the demonstrator's hands and a tug of war over it ensued. While [the demonstrators] were trying to regain possession of the flag, they were also engaging members of the crowd in arguments about flag burning. Eventually, Lessin recovered the flag and burned it.[6]

---

[3] *Id.* at 414.

[4] *Id.* at 420.

[5] *State v. Lessin*, 620 N.E.2d 72, 73–74 (Ohio 1993).

[6] *Id.* at 74.

19.     Thus began the City's attempts to find a work-around to punish "unpatriotic" speech. The City's police officers cited Ms. Lessin with inciting violence, and the state of Ohio convicted her.[7] But the Ohio Supreme Court reversed her conviction because shabby "patriotism" was not unique to opponents of flag-burning in Texas, and the jury was not adequately instructed on her First Amendment rights.[8] The Court's rationale speaks resoundingly to Mr. Johnson's ordeal: "Our decision rests in large part on our awareness of the depth of those personal convictions that consider flag desecration as a repugnant and intolerable act."[9]

### Cleveland police learn nothing.

20.     Those "personal convictions" were (and remain) widely held by Cleveland police officers. But even after *Johnson* and *Lessin*, the City did not train its officers on constitutional protections for symbolic burnings that challenge national or civic pride, or take measures to ensure that police action against protected speakers remained uncorrupted by those convictions.

21.     Instead, the City read *Lessin* as an invitation to effect censorship by other means, and tried a series of criminal charges on for size. In fact, *Lessin* would provide the framework (but not the facts) for the City's prosecution of Mr. Newburger:

> While Lessin's right to verbally criticize her government's foreign policy and her right to burn the United States flag without urging people to commit violent acts can in no way form the basis of a conviction under R.C. 2917.01, Lessin's alleged assaults of passersby are not constitutionally protected from criminal sanction . . . [10]

---

[7] *Id.* at 75.

[8] *Id.* at 79.

[9] *Id.*

[10] *Id.* at 77.

22.     But the City did nothing in the interim to prevent its officers from unconstitutionally transmuting personal convictions into criminal charges. In 2001, Cleveland's former police chief Rocco Pollutro testified that the City had "no written or unwritten procedures to be followed in the case of public burnings," never "ordered instruction on probable cause in cases of public demonstrations or burnings," and could not recall ever disciplining or even reprimanding an officer for constitutional violations, either before or after a series of arrests in 1997 and 1999 for public burnings in protest of civic symbols.[11]

23.     In 1997, the City arrested demonstrators who burned an effigy of Chief Wahoo in a designated free-speech area on charges of disorderly conduct, criminal trespass, criminal endangering, and resisting arrest, claiming that the protest had damaged a tree.

24.     Those protesters were acquitted on April 7, 1999 on defense motions."[12] But three days later, the City tried again, arresting two of the same protestors for burning another effigy of Chief Wahoo. The City booked them on charges of aggravated arson and detained them overnight, but "did not prosecute appellees for violating any law."[13] The arrestees' civil lawsuit reached the Ohio Supreme Court in 2004, which reminded the City that *Texas v. Johnson* was still the law of the land, and drew the legal line between policing *bona fide* public-safety concerns (pouring lighter fluid on a burning effigy in windy conditions amidst agitated demonstrators), and effecting retaliatory arrests.[14]

---

[11] Brief in opposition to Defendants City of Cleveland and Rocco Pollutro's Motion for Summary Judgment, *Bellecourt v. City of Cleveland et al.*, No. 381990, 2001 WL 34890955 (Ohio Ct. Cmn. Pl. Jan. 16, 2001) (summarizing then-Chief Pollutro's deposition testimony).

[12] *Id.*

[13] *Bellecourt v. Cleveland*, 820 N.E.2d 309, 311 (Ohio 2004) (affirming post-trial directed civil Section 1983 verdict for the City).

[14] *Id.*

**The Sixth Circuit forbids pretextual arrests on the basis of public safety.**

25.     The year before Mr. Newburger's arrest in Cleveland, the U.S. Court of Appeals for the Sixth Circuit sitting *en banc* admonished police officers for invoking public-safety concerns about audience reactions as reason to censor or punish speakers.[15] It addressed its *Bible Believers* opinion directly to police officers, even those not before it, reminding them that audience reactions do not immunize them from § 1983 liability, and reiterating the "substantive duties of a police officer not to effectuate a heckler's veto."[16]

26.     It was clearly established by 2015 that police officers have an *affirmative* First Amendment obligation to take reasonable measures to avoid effectuating a heckler's veto and to protect protestors.

27.     It was clearly established far earlier that a core purpose of the freedom of speech "is to invite dispute," which is "protected against censorship or punishment" notwithstanding "public inconvenience, annoyance, or unrest," because "the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups."[17]

28.     Despite how unpopular the act is to some Americans, the Supreme Court has already determined that burning the American flag is protected speech. Thirty-two years after Mr. Johnson's trek to the 1984 Republican National Convention, Mr. Johnson came to Cleveland—accompanied by Mr. Newburger and others—to send that symbolic message again.

---

[15] *Bible Believers v. Wayne County*, 805 F. 3d 228, 247–55 (6th Cir. 2015).

[16] *Id.* at 252; *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007).

[17] *Terminiello v. City of Chicago*, 337 U.S. 1, 4–5 (1949).

29. The City knew the 2016 RNC created an unprecedented "dominant political group" in Cleveland, and faced a flood of attendees who overwhelmingly detested supposedly unpatriotic speech. But in its preparations for the RNC, the City provided no specific training to its police officers to prevent the imposition of a heckler's veto against dissenters' protected speech.

### The RNC comes to Cleveland.

30. When the City successfully campaigned to host the 2016 RNC, the political atmosphere was ripe for an attempt to circumvent *Texas v. Johnson*. Donald Trump would be selected as the Republican nominee, and his campaign emphasized robust nationalism and promised strong support for law enforcement to operate with impunity. His platforms were well-known and widely supported among Cleveland police officers, and he would soon garner full-throated endorsements from the Fraternal Order of Police and the Cleveland Police Patrolmen's Association and those unions' leaders.

31. Political nationalism was at an apogee, and flag-burners, their constitutional rights notwithstanding, remained an object of scorn to police officers. On November 29, 2016, Trump tweeted his disdain for *Texas v. Johnson*, claiming flag-burners should be jailed. This sentiment was widely shared by police officers across the country, including Cleveland, who saw flag-burning as an assault on police dignity and an insult to their sacrifices.[18]

32. During the Convention, Cleveland was occupied by thousands of law-enforcement officials who shared these convictions. The City received a $50-million federal grant to

---

[18] Story Hinckley, *Why a Penn. man arrested for flag desecration was awarded $55,000* (Christian Science Monitor, July 22, 2016), *available at* https://www.csmonitor.com/USA/2016/0722/Why-a-Penn.-man-arrested-for-flag-desecration-was-awarded-55-000.

implement a sweeping police protocol for the RNC, and officers from the FBI, the Secret Service, the National Guard, and the Cleveland Division of Police patrolled the City.[19]

33.     With massive public resources at its disposal, the City bragged about its capacity to constitutionally police the RNC, and established "free-speech zones" for protestors to exercise their First Amendment rights, including the site where Mr. Newburger was arrested.

34.     According to the City's ostensible plan, "Anyone wishing to exercise their First Amendment rights will be able to do so and the City of Cleveland will assist them to ensure a safe environment."[20] The law remained clearly established that police officers "may not base . . . probable-cause determination on speech protected by the First Amendment."[21]

35.     Defendant Williams was responsible "for the direction, supervision, and management of all law enforcement officers" in designated free-speech areas.[22]

36.     But training police to protect protesters' First Amendment rights remained an afterthought. "The Goal of the City of Cleveland," it declared, "is to provide a safe and secure environment for all participants, news media, individuals exercising their First Amendment Rights, service providers, and the general public," but the $50 million procurement did not provide funding for any specific training on protecting the protected speech its officers loathed.[23]

---

[19] City of Cleveland Safety Preparedness Update ("the Security Plan"), attached as Exhibit 1.

[20] Id. at 12.

[21] *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).

[22] The Security Plan, at 6.

[23] *Id.* at 48.

### The City surveils the Revolution Club.

37.     The funding did allow Defendant Williams and the other Defendants to surveil the Revolution Club, the political group accompanying Mr. Newburger and Mr. Johnson, before and during the RNC.

38.     Defendants were aware of the planned protest. The Revolution Club issued a press release declaring its intent to burn a flag at the free-speech zone at the corner of East 4th Street and Prospect Avenue,[24] and the City's officers "were specifically made aware of the plan . . . for one single individual that was going to burn a flag at 4th and Prospect."[25]

39.     The City knew that protestors' right to choose the particular circumstances of a protest, including proximity to the object of their protest, is vital to the delivery of their message.[26] And the City knew that its officers had a duty to protect, not violate, Mr. Newburger's First Amendment rights. A recently adopted General Order claimed, emptily, that "The Cleveland Division of Police recognizes the right of free speech and assembly and shall actively protect people in the exercise of those rights."[27]

### The City fails to train officers to protect First Amendment rights.

40.     Mere months later, when he testified under oath in related criminal prosecutions arising from Mr. Newburger's protest, Defendant Williams claimed that extensive classroom training had been provided on policing protests, but was unable to recall a single

---

[24] *E.g.*, Testimony of Calvin Williams, *Transcript, Motion to Dismiss Hearing, Cleveland v. Arrant et al.*, No. 2016-CRB-013733, at 58:2–59:22 (Cleveland Mun. Ct. Jan. 26, 2017). A copy of this transcript (the "MTD Transcript") is attached as Exhibit 2.

[25] MTD Tr. at 39:23–40:4.

[26] *E.g.* MTD Tr. at 28:7–12; 32:21–33:5.

[27] MTD Tr. at 25.

specific training provided to officers about the First Amendment rights of protestors.[28] He did not identify a single instance of training on symbolic speech or flag-burning.

41.     The only portion of the training materials entitled "Crowd Management and [t]he Protection of Constitutional Rights" to which the Chief referred that could conceivably provide guidance to officers confronting symbolic flag-burning was buried in a single page of a voluminous, otherwise scarcely relevant PowerPoint presentation. It suggested police officers should provide no protection whatsoever.

42.     Instead, the lonely training slide (depicted below) instructed Cleveland police officers to remain vigilant and immediately *extinguish* symbolic speech, that is, violate the First Amendment. Entitled "Officer and Crowd Engagement," the slide instructed City personnel to "be vigilant for activities such as burning of objects," and directed them, "at the first sign of such activity," to "deploy a quick response plan to immediately address the activity including extinguishing any fires":



---

[28] MTD Tr. at 35:10–22.

43.     None of the RNC training given to the City's officers adequately provided guidance to conform their conduct to the First Amendment, or abstain from unconstitutional retaliation against the content of Mr. Newburger's protected expression.

44.     Other Cleveland police officers have since testified under oath that, since the 1990s, they have received no First Amendment training of any sort.

45.     The overwhelming focus of the City's efforts was speech-preventive, not speech-protective. The City developed a sweeping safety protocol that outlined a multi-agency, state/federal law-enforcement apparatus, including plans for swiftly processing mass arrests, mobile medical units, and extensive surveillance and anti-terror capabilities.[29] It had the capacity, if it chose, to swiftly process and release arrested protestors so that they could continue to exercise their First Amendment rights.[30]

46.     The City knew, or had reason to believe, that these officers opposed Mr. Newburger's, Mr. Johnson's and the Revolution Club's speech on the basis of its content. And they did. Through its official Twitter account, the Division of Police indicated its disdain for Mr. Newburger's anticipated symbolic speech, repeatedly promising its followers—with a dismissive exclamation point—that Cleveland would "take care of that!"

---

[29] Ex. 1.

[30] *E.g.* George Zornick, *Why Are People Arrested at the RNC Still In Jail?* (The Nation, July 21, 2016), available at https://www.thenation.com/article/why-are-detained-rnc-protestors-still-in-jail/.



**The Revolution Club attempts a peaceful protest**

47.     Before the RNC protest, Mr. Newburger and the protest group practiced forming a safety circle by linking arms around Mr. Johnson and his symbolic speech until they were confident they could ensure a safe and peaceful protest.

48.     At the free-speech zone, Mr. Newburger stood on Mr. Johnson's right in the safety circle, holding the megaphone for Mr. Johnson (depicted below).[31]

---

[31] Mr. Newburger is circled in red in all images where he is present.



49.     The Revolution Club ensured that the safety circle provided adequate space to safely

perform the symbolic speech, without risking injury to anyone (depicted below).



50.     As Mr. Johnson prepared to light the flag, Mr. Newburger stood with Mr. Johnson

inside the circle to help maintain a safe protest (depicted below).



51.     Unjustifiably, the officers started to extinguish the flag less than two seconds after it was lit (depicted below). Mr. Newburger attempted to block the fire extinguisher.



52.     The officers pre-emptively censored Mr. Newburger's speech, before any safety

concern reasonably existed (depicted below). As Lt. Gaertner wrote in a police report, "As

soon as they began to light an American flag on fire, Lt. Gaertner and Sgt. William Stanton

used 'cold fire' to extinguish the flame."[32]



53.     Mr. Newburger never resisted the police. Facing armed officers, Mr. Newburger

stood resolute, chanting in the safety circle. The officers forced their way through the circle

to suppress the speech and reach their primary target, Mr. Johnson (depicted below).

---

[32] Gaertner Field Report, attached as Exhibit 3.



54.     In their fervor to extinguish the speech, the police sprayed Mr. Newburger directly

in the face with a chemical extinguisher (depicted below).



55.     The safety circle began to collapse from the pressure of the police. Mr. Newburger,

Mr. Johnson, and the Revolution Club kept what little flame remained a safe distance from

the crowd, holding the flag still and keeping the public away (depicted below).



56.    It wasn't until after the fire was completely suppressed, the safety circle was broken

apart, and protesters were being arrested that one of the officers shouted, falsely and

pretextually, "You're on fire!" (depicted below).



57.    The officer repeated contemptuously, "You're on fire, stupid!"



58.    The officer then moved away, because no one was actually on fire (depicted below).

This was simply the officer's poor attempt to shield Defendants from liability by fabricating

probable cause.



59.    While the officers bore Mr. Johnson down, Mr. Newburger remained standing

peacefully chanting, until he too was forced to the ground by Defendant France (depicted

below).



60.    Mr. Newburger remained on the ground painfully intertwined in a pile of Revolution

Club members being held down and arrested. Mr. Newburger never made any aggressive

contact with a police officer during the attempted protest and arrest.



61.     Defendant France then placed Mr. Newburger in police restraints and forced him to
his knees while the remaining protesters were arrested. Mr. Newburger peacefully chanted
protest words from the ground until Defendant France placed him in the back of a police
wagon.

62.     No lawful basis existed for any reasonable police officer to believe there was
probable cause to arrest Mr. Newburger. Defendants were solely motivated to stop Mr.
Johnson, Mr. Newburger, and the Revolution Club from burning the flag—that is, from
engaging in First-Amendment protected symbolic speech.

**The City detains Mr. Newburger to prevent him from continuing his protest**

63.     The City deployed enormous resources to police the RNC, but used them to silence
and restrain Mr. Newburger, not protect his speech or expeditiously process his arrest.

64.     The City held Mr. Newburger for 24 hours while it scrambled to manufacture a legal
basis to justify his arrest. The City held Mr. Newburger as long as it could—through day

four of the Convention—as it explored a series of bogus charges in drafted—and
discarded—police reports.

65. The City's detention of Mr. Newburger terminated his lawful protest and thwarted
his proximity to its object during the RNC's most important days, at the very moment his
speech was most salient.

**The police declare victory.**

66. The Division of Police promptly bragged about its interference with Mr.
Newburger's speech in social-media posts that trivialized the importance of the very
speech the Supreme Court protected. The Division's spokeswoman, Sgt. Jennifer Ciaccia,
breathlessly declared the site of Mr. Newburger's censorship "a crime scene," posting a live
video of her commentary on Twitter:

> We're live at East 4th and Prospect where a large protest was just disbursed.
> We had arrived over here a short time ago and there was a demonstration in
> progress. We had some information that it was possibly a flag-burning
> demonstration. Cleveland firefighters did arrive on scene and they
> extinguished a[n] American flag that protestors were burning; you can see
> the remnants of it just right over here. So this area has been declared a crime
> scene and all media has [sic] been asked to clear the area...[33]

---

[33] Jennifer Ciaccia, *Live Update E. 4/Prospect #RNCinfo* (Twitter, July 20, 2016, 4:48 pm), *available
at* https://twitter.com/CLEpolice/status/755866897107812352).

67.    Sgt. Jennifer Ciaccia heralded the City's "success" online for the Division's followers to "like":



It proved to be a popular post.

**The officers hunt for a charge, and draft false and misleading reports.**

68.    Defendant France had no cause to believe any crime was committed.

69.     On the evening of Mr. Newburger's arrest, Defendant Chief Williams stood before reporters and falsely claimed that Mr. Johnson had set himself on fire, admitting that Mr. Johnson's conduct was otherwise lawful:

> Reporter:      If they hadn't set themselves on fire, they were just going to be allowed to burn the flag, and that was it?
>
> Williams:      It's not against the law.[34]

70.     Williams also claimed that the protesters assaulted officers and caught bystanders on fire:

> Williams:      [An individual] attempted to burn an American flag, which is their right. But in doing so the individual who actually lit the flag, lit himself on fire. And as we were trying to put him out, and he's trying to push my officers away, he actually got a couple other people lit on fire, which we tried to put out too.[35]

71.     These were *lies*. As shown above, Mr. Johnson didn't even have a singe on his body or clothing. Nor did any of his fellow protestors or bystanders. Mr. Newburger and Mr. Johnson had a safe distance between the flag and other protesters.

72.     Defendant Williams was on the scene mere moments after his officers extinguished the speech, and he *knew* what he was saying was a lie.

### The Revolution Club members face meritless charges

73.     While Mr. Newburger was incarcerated, Defendants rifled through theories of post-hoc criminal liability for the arrest of Mr. Newburger and the Revolution Club.

---

[34] Press Conference with Calvin Williams, Chief of Police, City of Cleveland, in Cleveland, Ohio (July 20, 2016), attached as Exhibit 5 (to be manually filed).

[35] *Id.*

74.     Eventually, the officers filed a series of false or misleading reports intended to induce criminal prosecution of Mr. Newburger. These reports and the resulting charges were authorized and ratified by Defendant Williams.

75.      The baseless charges Mr. Newburger faced were obstructing official business, and aggravated disorderly conduct, for which no probable cause existed.

76.     Defendants knew the charges were meritless. Mr. Newburger exercised protected speech in the free-speech zone and committed no crime. The officers present for his arrest, including Defendant Williams, knew or reasonably should have known the circumstances surrounding Mr. Newburger's arrest.

77.     As shown above, Mr. Newburger was arrested without probable cause, and then held in police custody for over 24 hours and charged. Defendant France maliciously, and with Defendant Williams's authorization and ratification, prepared a report that was false, misleading or omitted material facts, which led Mr. Newburger's prosecution.

78.     The prosecution against Mr. Newburger and the Revolution Club continued for months without probable cause, with Defendants' continued participation.

79.     Defendants' actions and false reports caused Mr. Newburger, Salome Arrant, Diya Cruz, Edward Diaz, Courtney Donelson, Linda Daitsman, Ernestine Hamilton, Victoria Inguanta, Zullay Pichardo, Steven Fridley, and Raphael Schiller-Laden to be charged with obstructing official business and aggravated disorderly conduct. Mr. Fridley was additionally charged with resisting arrest. Julie Leroy was charged with failure to comply with a lawful order and aggravated disorderly conduct.[36]

---

[36] *City of Cleveland v.* Newburger, 2016-CRB-013732 (Oct. 20, 2017); City *of Cleveland v. Arrant*, 2016-CRB-013733 (Oct. 20, 2017); *City of Cleveland v. Cruz*, 2016-CRB-013736 (Oct. 20, 2017); *City of Cleveland v. Diaz*, 2016-CRB-013739 (Oct. 20, 2017); *City of Cleveland v. Donelson*, 2016-

80.     Defendants' false reports also caused Lisa Castanon and Mr. Johnson to be charged with misdemeanor assault. These charges were dismissed *nolle prosequi* on January 11, 2017.[37]

81.     The remaining charges were dismissed against these protestors by judicial order docketed on October 20, 2017, which granted a defense motion to dismiss under *Texas v. Johnson*.[38]

82.     After conducting an evidentiary hearing and viewing ample video evidence, Cleveland Municipal Court Judge Patton, who presided over the City's prosecution of the above individuals from the Revolution Club involved in the flag-burning, explained that "[i]t looked like they were doing a peaceful protest," and understood that Mr. Johnson "was doing what he did, and the Supreme Court said he could do it."[39] Judge Patton therefore dismissed all charges against Mr. Newburger and his fellow protesters by order, making the following findings that Mr. Newburger realleges here:

> The defendants were arrested on July 20, 2016 while engaged in political protests at the intersection of East 4th Street and Prospect Avenue, in the City of Cleveland, County of Cuyahoga, and State of Ohio. The defendants

---

CRB-013734 (Oct. 20, 2017); *City of Cleveland v. Daitsman*, 2016-CRB-013737 (Oct. 20, 2017); *City of Cleveland v. Hamilton*, 2016-CRB-013746 (Oct. 20, 2017); *City of Cleveland v. Inguanta*, 2016-CRB-013735 (Oct. 20, 2017); *City of Cleveland v. Pichardo*, 2016-CRB-13741 (Oct. 20, 2017); *City of Cleveland v. Schiller-Laden*, 2016-CRB-013742 (Oct. 20, 2017); *City of Cleveland v. Fridley*, 2016-CRB-013744 (Oct. 20, 2017); *City of Cleveland v. Leroy*, 2016-CRB-013705 (Oct. 20, 2017).

[37] *City of Cleveland v. Castanon*, 2016-CRB-013730 (Jan. 11, 2017); *City v. Johnson*, 2016-CRB-013728 (Jan. 11, 2017).

[38] Mr. Newburger's claims are intertwined with those plead by Mr. Johnson in a recently settled civil action, *Johnson v. City of Cleveland, et al.*, and Mr. Newburger adopts the factual allegations pleaded by Mr. Johnson's First Amended Complaint, and incorporates and re-alleges them as though fully set forth below.

[39] Matt Pearce, *Protesters who burned the U.S. flag at 2016 Republican convention were wrongly charged, judge says* (Los Angeles Times Oct. 24, 2017), available at http://latimes.com/nation/la-na-flag-burning-20171024-story.html.

were all charge with; Failure to Comply with a Lawful Order, Aggravated Disorderly Conduct, and/or Obstruction of Official Business. The Republican National Convention (RNC) was being held in Cleveland, Ohio during this time. In their brief the defendants allege they had gathered peacefully at the intersection of East 4th Street and Prospect Avenue in the City of Cleveland, County of Cuyahoga and State of Ohio.  The protesters were surrounded by media and spectators. The protesters began to chat, "One, two, three, four, slavery, genocide and war. Five, six, seven, eight, America was never great." This Court viewed video of these events and saw what appeared to be one of the defendants pulling a flag from underneath his shirt. There were other defendants/protesters who circled around defendant, Gregory Lee Johnson. They locked arms and continued to chant. The video showed someone spraying a fire retardant on Mr. Johnson and the American flag while he was attempting to set the flag on fire.

. . .

From the audio portion of the video it is apparent there were people in attendance during these events who were offended by the protesters songs and Mr. Johnson's actions in attempting to burn the flag.[40]

83.     Judge Patton rendered the following conclusions of law:

As in Johnson, the prosecution in the cases, sub judice, seeks to sanction the defendants' conduct under the disorderly conduct laws. If there is a bedrock principle underlying the first amendment [*sic*], it is that the government may not prohibit the expression of an idea without more that removes the idea from the First Amendment's protection. See, Hustler Magazine, Inc. v. Farwell, 485 U.S., at 55-56; City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, (1984). [*sic*] The U.S. Supreme Court has not recognized an exception to this principle even where the flag has been involved in protest marches.

In the case pending before the Court, the defendants were engaged in the expressive conduct of flag burning. As repugnant as that behavior may be to some, Texas v. Johnson makes it plain that such conduct may not be sanctioned as breaches of the peace. Therefore, the Defendants' Joint Motion to Dismiss is well taken and is therefore granted.

It is therefore ORDERED that all charges against each defendant in the above captioned cases now pending before this Court, must be, and therefore are DISMISSED.  [Accordingly] Each defendant is discharged of record. The costs of these matters are ORDERED taxed to Plaintiffs, City of Cleveland/State of Ohio.[41]

---

[40] *City of Cleveland v. Newburger*, 2016-CRB-013732 (Oct. 20, 2017).

[41] *Id.*

84.     Defendants' actions and false reports also caused Dominique Knox to be indicted for felony assault, felony obstructing police business, and resisting arrest, and Joseph Scogin to be indicted for two counts of felony assault, felony obstructing police business, and resisting arrest. All charges against these two protesters were dismissed with prejudice on August 13, 2017.[42]

85.     All proceedings were terminated in Mr. Newburger's favor.[43]

### CAUSES OF ACTION (FEDERAL)

### CLAIM 1
FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—WRONGFUL ARREST
(Against the City and individual defendants in their official and personal capacities)

86.     Plaintiff incorporates all previous allegations.

87.     "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."[44]

88.     Defendants arrested Mr. Newburger because of the content of his speech.

89.     Mr. Newburger has a Fourth and Fourteenth Amendment right to be free from wrongful arrest under the circumstances of his arrest.

90.     No officer could have reasonably believed there was probable cause to arrest Mr. Newburger.

---

[42] *The State of Ohio v. Knox*, CR-16-608206-A (Aug. 13, 2017); *The State of Ohio v. Scogin*, CR-16-608206-B (Aug. 13, 2017).

[43] *Fletcher v. Univ. Hosp. of Cleveland*, 120 Ohio St.3d 167 at 171-72 (Ohio 2008) (holding that court's dismissal on merits of the action is done with prejudice).

[44] *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999)).

91.     Defendants' actions violate the Fourth and Fourteenth Amendments via 42 U.S.C.

§ 1983.

92.     As a direct and proximate result of the City's unlawful activity, Plaintiff has suffered

economic and non-economic damages for which the City is liable.

93.     The City's acts were willful, egregious, malicious, and worthy of substantial sanction

to punish and deter the City and others from engaging in this type of unlawful conduct.

### CLAIM 2
FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—MALICIOUS PROSECUTION
(Against the City and individual defendants in their official and personal
capacities)

94.     Mr. Newburger incorporates all previous allegations.

95.     "[T]he constitutional tort of malicious prosecution…is actionable in our circuit as a

Fourth Amendment violation under § 1983."[45]

96.     At the time of his arrest, Mr. Newburger was standing peacefully in a safety circle,

chanting protest words in a designated free-speech zone. Mr. Newburger neither

obstructed police business, nor engaged in disorderly conduct. Probable cause for Mr.

Newburger's arrest cannot be furnished by these facts.

97.     Defendants made, influenced, or participated in the decision to prosecute Mr.

Newburger by falsifying evidence, drafting and submitting misleading investigative reports

and affidavits, and omitting key and material facts.

98.     Mr. Newburger suffered a deprivation of his liberty and irreparable harm. Even after

the initial seizure, he was compelled to attend court hearings and subject to bond

restrictions.

---

[45] *King v. Harwood*, 852 F.3d 568, 284 (6th Cir. 2017).

99.     The prosecution was resolved in his favor when all charges were dismissed.

100.    Defendants' conduct violated the First and Fourteenth Amendments.

101.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has

suffered economic and non-economic damages for which Defendants are liable. The ordeal

and the year-long prosecution deprived him of the vocation he found in political organizing.

The repeated court-ordered appearances interfered with his employment, and caused him

anxiety and emotional distress.

102.    Defendants' acts were willful, egregious, malicious, and worthy of substantial

sanction to punish and deter Defendants and others from engaging in this type of unlawful

conduct.

### CLAIM 3
FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—RETALIATORY PROSECUTION
(Against the City and individual defendants in their official and personal
capacities)

103.    Plaintiff incorporates all previous allegations.

104.    Defendants took adverse action because of a forbidden motive, namely Plaintiff's

exercise of his right to free speech.

105.    A causal connection exists between Defendants' retaliatory animus and Plaintiff's

subsequent injury. Defendants induced the action of the prosecutor who would not have

pressed charges otherwise.[46]

106.    Defendants harbor disdain for anyone who would burn the American flag.

Defendants believe burning the flag is unpatriotic, disrespectful, and should not be

tolerated. This is evidenced by Defendants' decision to arrest Mr. Newburger, publicly

---

[46] *Id.* (citing *Hartman v. Moore*, 547 U.S. 250 (U.S. 2006)).

praise the suppression of Mr. Newburger's speech, create false police reports, and continue Mr. Newburger's prosecution.

107.    Defendants never had probable cause to arrest Mr. Newburger. Mr. Newburger stood inside the safety circle peacefully chanting until he was arrested. Mr. Newburger stood in a free-speech zone, dedicated as such by Defendants.

108.    Defendants created or ratified false police reports alleging that Mr. Newburger had obstructed official business and engaged in disorderly conduct to induce the City prosecutor to pursue criminal charges against Mr. Newburger.

109.    No reasonable prosecutor or reasonable municipal defendant could believe Mr. Newburger's actions warranted prosecution, absent the false police reports. All prosecutors and Defendants knew, or reasonably should have known, the landmark *Texas v. Johnson* case. Defendants' knew, or reasonably should have known, that Mr. Newburger was part of the protest group joining in Mr. Johnson's symbolic speech because a press release was issued in advance of the demonstration, and the national attention the announcement received.

110.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered economic and non-economic damages for which Defendants are liable.

111.    Defendants' acts were willful, egregious, malicious, and worth of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 4
### MUNICIPAL *MONELL* LIABILITY, 42 U.S.C. § 1983—AUTHORIZED ACTION
### (Against the City of Cleveland)

112.    Plaintiff incorporates all previous allegations.

113.    The City and its designated policymaker for police practices at the RNC free-speech zone, Defendant Williams, and was authorized to issue and implement official policy on criminal investigations and prosecutions by the City.

114.    Defendant Williams authorized a malicious prosecution to conceal the constitutional violations committed.

115.    The commencement and pursuit of meritless charges was authorized and intended to create plausible deniability for the unlawful censorship affected by the City.[47] The City demonstrated indifference to the constitutional rights of protesters who challenge government policies, and attempted to remove speech deemed inconvenient or disagreeable from designated free-speech zones because Cleveland was on the world stage.

116.    No reasonable officer or attorney could believe that the Constitution permits the actions Defendants took. No reasonable officer or attorney could believe that the City had probable cause to arrest of prosecute Mr. Newburger. The investigative reports authorized and ratified by Defendant Williams and the City sought to conceal the lawful nature of Mr. Newburger's conduct.

117.    As a direct and proximate result of the City's unlawful activity, Plaintiff has suffered economic and non-economic damages for which the City is liable.

118.    The City's acts were willful, egregious, malicious, and worth of substantial sanction to punish and deter the City and others from engaging in this type of unlawful conduct.

**CAUSES OF ACTION (STATE)**

**CLAIM 5**
MALICIOUS CRIMINAL PROSECUTION

---

[47] *Canton v. Harris*, 489 U.S. 378, 392 (1989); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 996 n.8 (6th Cir. 1994).

(Against the City and individual defendants in their official and personal capacities)

119.    Plaintiff incorporates all previous allegations.

120.    "[T]o state a cause of action for malicious prosecution in Ohio, four essential
elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings
against the plaintiff by the defendant, (2) lack of probable cause for filing of the prior
lawsuit, (3) termination of the prior proceeding in plaintiff's favor, (4) seizure of plaintiff's
person or property during the course of the prior proceedings."[48]

121.    Defendants maliciously instituted the criminal prosecution of Mr. Newburger
without probable cause.

122.    Defendants maliciously continued the criminal prosecution of Mr. Newburger
without probable cause.

123.    The prosecution of Mr. Newburger was resolved in his favor on October 20, 2017
when all charges were dismissed by order of the Court.

124.    Defendants' malicious prosecution of Mr. Newburger caused him irreparable harm.

125.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has
suffered and continues to suffer economic and non-economic damages for which
Defendants are liable.

126.    Defendant's acts were willful, egregious, malicious, and worthy of substantial
sanction to punish and deter Defendants and others from engaging in this type of unlawful
conduct.

### CLAIM 6
CIVIL LIABILITY FOR CRIMINAL ACTION, UNDER OHIO REV. CODE §§ 2307.60(A)(1) AND
2921.03(A)—INTIMIDATION (FALSE OR FRAUDULENT WRITING)

---

[48] *Robb v. Chagrin Langoons Yacht Club*, 75 Ohio St. 3d 264, 269 (Ohio 1996). (cleaned up)

(Against the City and individual defendants in their official and personal capacities)

127.    Plaintiff incorporates all previous allegations.

128.    Ohio Rev. Code §2921.03(A) provides that "[no] person, knowingly and by…filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of that person's duty."

129.    Defendant France, with the supervision and ratification of Defendant Williams, produced an investigative report containing materially false grounds for charging Mr. Newburger with meritless charges of obstructing official business and aggravated disorderly conduct. Defendants found Mr. Newburger's and his fellow protesters' speech objectionable, and chose to silence them through arrest.

130.    Defendants France and Williams maliciously created false investigative reports to influence the City's prosecutor to pursue the charges.

131.    No reasonable officer or attorney could believe that the Constitution permits the actions Defendants took. No reasonable officer or attorney could believe that the City had probable cause to arrest of prosecute Mr. Newburger.

132.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable. Mr. Newburger's resulting prosecution deprived him of the vocation he found in political organizing. The repeated court-ordered appearances interfered with his employment, and caused him anxiety and emotional distress.

133.     Defendant's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

PRAYER FOR RELIEF

Mr. Newburger respectfully requests that the Court:

1.     Enter judgment in Mr. Newburger's favor on all claims for relief;

2.     Declare that Defendant's acts, omissions, and conduct constitute violations of the Fourth and Fourteenth Amendments to the United States Constitution, and well as 42 U.S.C. § 1983;

3.     Award injunctive relief enjoining Defendants from further unlawful application of Ohio law, and requiring Defendants to conduct adequate and specific training on protecting symbolic speech, including how to protect those who may wish to protest by burning the American flag, and how to avoid unlawfully arresting protesters;

4.     Declare that Defendants are liable for damages on all claims for relief;

5.     Award full compensatory damages, including but not limited to damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience that Mr. Newburger has suffered and is reasonably certain to suffer;

6.     Award punitive and exemplary damages, including but not limited to damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience that Mr. Newburger has suffered and is reasonably certain to suffer;

7.     Award pre- and post-judgment interest at the highest lawful rate;

8.     Award Mr. Newburger his reasonable attorneys' fees and all other costs of suit available under 42 U.S.C. § 1988 and Ohio Rev. Code 2921.03(C); and

9.     Award all other relief in law and equity, including injunctive relief, to which Mr. Newburger is entitled and that the Court deems equitable, just and proper.

### Jury Demand

Plaintiff demands a trial by jury on all issues within this complaint.

Respectfully submitted,

THE CHANDRA LAW FIRM LLC

*/s/Subodh Chandra*

_____
Subodh Chandra (0069233)
Ashlie Case Sletvold (0079477)
Brian Bardwell (0098423)
The Chandra Law Building
1265 W. 6th St., Ste. 400
Cleveland, Ohio 44113
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Attorneys for Plaintiff Richard Newburger*